UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTER M. MILLER, | ) |
| Plaintiff, | ) |
| v. | ) No. 20 C 414 |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA, | ) Judge Sara L. Ellis |
| Defendant.[1] | ) |

**OPINION AND ORDER**

Plaintiff Ester M. Miller has worked for Defendant Northeast Illinois Regional Commuter Railroad Corporation ("Metra") as a coach cleaner since 2012. In her third amended complaint, she alleges that Metra created a sexually hostile work environment (Count I) and retaliated against her for complaining about employees' actions in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count II). Metra has moved to dismiss the third amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because Miller's complaint includes a timely act of sexual harassment and she has pleaded enough facts that could plausibly amount to a hostile work environment, the Court denies Metra's motion to dismiss the hostile work environment claim. But because Miller has not sufficiently alleged that she experienced an actionable adverse action, she cannot proceed with her retaliation claim.

---

[1] The caption of Miller's third amended complaint also includes John Frencher and Juan P. Rodriguez as Defendants, but Miller does not direct her claims against them. As the Court noted in its earlier opinion addressing Metra's motion to dismiss Miller's amended complaint, Title VII does not provide for individual liability and so Miller cannot pursue such claims against Frencher and Rodriguez. Doc. 45 at 1 n.1.

## BACKGROUND[2]

Miller began working for Metra as a coach cleaner at Metra's 18th Street yard location on September 23, 2012. John Frencher, Juan Rodriguez, and Rich Pickens also work for Metra at the 18th Street yard, with Pickens and Rodriguez serving as superintendents. The majority of Miller's coworkers and supervisors are men. In March 2013, Frencher began directing sexually charged statements at Miller and continued to threaten, bully, and harass her when he encountered her in the workplace. In September 2013, Frencher assaulted Miller by grabbing her head and pulling it toward his groin area. In October 2017, he chased and tried to grab Miller. In November 2017, Frencher asked Miller to look at x-rays related to his knee pain but instead showed Miller a picture of a man's penis.

Beginning in 2015, Miller began confiding in a coworker, Rita Falcon, about Frencher's harassment. On March 7, 2018, Falcon confronted Frencher and told him to leave Miller alone. Frencher then confronted Miller, threatening her because Falcon had told him to leave Miller alone. Later that day, Falcon filed a statement of complaint with Metra regarding Frencher's harassment of Miller. Falcon stated that Miller told her that Frencher "was bothering [Miller] at work and she wanted for him to leave her alone." Doc. 50-2 at 1. Falcon indicated she was particularly offended by Frencher calling Miller names that called into question her mental state. Metra supervisors undertook an investigation and determined that Miller and Frencher should not work in the same train car. Metra did not share this determination with the supervisors and foremen at the 18th Street yard, and Frencher continued to harass Miller.

---

[2] The Court takes the facts in this section from the third amended complaint and exhibits attached thereto and presumes their truth for the purpose of resolving Metra's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

On September 12, 2018, Metra employee Gina Drinkwater took an unauthorized photo of Miller wearing a dress at a Metra-sponsored work event. On September 14, 2018, Drinkwater showed the photo to numerous employees at a Metra safety meeting and made statements concerning Miller wearing a dress. Metra employee Louis Valdery then approached Miller and used sexual vulgarity in referring to the photo. On the same day, Miller reported the incident regarding Drinkwater and Valdery to Pickens. Pickens directed Miller to report the incident to Metra Director Ed Whitham.

Employees who attended the safety meeting continued to harass Miller throughout September and October 2018. In October 2018, Valdery and Jordan Vaughn, another Metra employee, approached Miller and made sexually vulgar comments. Several months later, Metra transferred Vaughn out of the 18th Street yard and fired him for improper workplace conduct.

Despite raising complaints about the harassment, Miller found that Metra did not properly investigate them. Instead, in December 2018, Metra began an internal investigation into Miller, led by Pickens. On March 20, 2019, Metra charged Miller with failing to comply with Metra Employee Code of Conduct Rules and Metra's Mechanical Directive #3 when she failed to properly report and protect her work assignment on March 14, 2019. Miller did not have proper representation during the proceedings, and Metra employees provided concocted statements against her. Rodriguez served as a witness in the disciplinary proceedings against Miller. Miller waived her right to a formal hearing but claims that Metra denied her the opportunity to produce her requested witnesses. On April 2, 2019, Metra penalized Miller with a one-day suspension that it deferred for two years.

Miller filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 22, 2019, alleging sex discrimination and retaliation.

Specifically, she claimed that she was subjected to sexual harassment, complained about that harassment "to no avail," and was subsequently disciplined and placed on probation for two years. Doc. 50-1 at 2. She indicated January 24, 2019 as the latest date of discrimination. The EEOC issued a right to sue letter on October 17, 2019 and Miller timely filed this case thereafter.[3]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[3] The third amended complaint states the EEOC issued a Notice of Right to Sue on November 17, 2019. Doc. 50 at 7. However, Exhibit A to the third amended complaint shows the right to sue letter as being dated October 17, 2019, and so the Court uses this date. Doc. 50-1 at 1; *see N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (where an exhibit contradicts the allegations in the complaint, the exhibit controls).

ANALYSIS

I.   Hostile Work Environment Claim

   A.   Timeliness of the Claim

As it did with respect to Miller's amended complaint, Metra first argues that Miller's hostile work environment claim is untimely because she has not alleged any discriminatory conduct that falls within the 300-day window from when she filed her EEOC charge. In a deferral state, like Illinois, a plaintiff has a 300-day window to file an EEOC charge concerning an alleged unlawful employment practice for a Title VII claim based on those practices to be actionable. *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014) ("If a plaintiff does not file a charge concerning a discrete act within the 300-day window, her claim is time-barred and she may not recover."); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007) ("A charge of employment discrimination must be filed with EEOC within 300 days of the alleged unlawful employment practice."). For hostile work environment claims, the Court may consider the entirety of an employer's behavior to assess the plausibility of the claims as long as one contributing act took place within the statutory period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 115–17 (2002) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' . . . Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." (citation omitted)).

As the Court previously determined, because Miller filed her EEOC charge on July 22, 2019, she must allege at least one contributing act that took place after September 24, 2018. Doc. 45 at 4. The Court already concluded that Miller had not identified any acts committed by

5

Frencher that that took place after September 24, 2018, *id.* at 4–5, and she does not include any additional specific actions taken by Frencher in the third amended complaint. The Court also determined that Miller could not use the disciplinary investigation and suspension as a contributing act for her hostile work environment claim. *Id.* at 5.

In her third amended complaint, Miller adds allegations that, on September 12, 2018, Drinkwater took an unauthorized photo of Miller in a dress and displayed the photo to numerous employees, including Valdery, who made sexually vulgar comments to Miller with respect to the photo. But these actions again occurred outside of the 300-day window and so do not provide the hook for a timely claim. But Miller additionally alleges that, in October 2018, Valdery and Vaughn approached her and made sexually vulgar comments. These incidents do fall within the 300-day window.

Metra nonetheless argues briefly that these incidents cannot make Miller's claim timely because they exceed the scope of her EEOC charge. *See Sommerfield v. City of Chicago*, 863 F.3d 645, 648 (7th Cir. 2017) ("A plaintiff suing under Title VII 'may pursue a claim not explicitly included in an EEOC complaint *only* if her allegations fall within the scope of the earlier charges contained in the EEOC complaint.'" (emphasis added) (quoting *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005))); *see also Brindley v. Target Corp.*, 761 F. Supp. 2d 801, 806 (N.D. Ill. 2011) ("[T]he scope of the subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC." (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992))). This argument has no merit, given that, in her EEOC charge, Miller generally claims that other employees subjected her to sexual harassment and that the discrimination continued through January 24, 2019. *See Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831–32 (7th Cir. 2015) (a plaintiff need not include every fact in her charge,

6

with general reference to harassment sufficient to place an employer on notice of hostile work environment allegations).

Metra also argues that the October 2018 incidents of sexual harassment cannot make Miller's claim timely because they do not relate to the acts that took place outside the statutory period. "Sexual harassment claims may involve a series of discrete incidents that individually would not qualify as actionable claims but taken together form 'an actionable pattern of harassing behavior.'" *Rosa v. Bd. of Trs. of the Univ. of Ill.*, No. 18-CV-8477, 2020 WL 7319574, at *7 (N.D. Ill. Dec. 11, 2020) (quoting *Garner v. Nat'l Ry. Corp.*, No. 18-cv-3789, 2019 WL 414711, at *3 (N.D. Ill. Feb. 1, 2019)). "The violation at issue does not need to be continuous, only cumulative." *Id.* Although large gaps of time between incidents may keep them from forming one continuing violation, "facts such as the harassers' identities, whether they acted in concert or isolation, and whether they harassed in distinct or similar fashions are irrelevant to whether the allegations form a single unlawful practice." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017). Here, Miller has alleged that both before and after September 24, 2018, she repeatedly experienced sexual harassment, which Metra failed to remedy despite her complaints. Although discovery may reveal that the incidents are not sufficiently connected or that too much time passed between Frencher's allegedly harassing conduct and that which Miller experienced at the hands of Drinkwater, Valdery, Vaughn, and others, at this stage, drawing all inferences in Miller's favor, the Court concludes that Miller may proceed on her hostile work environment claim given that she has alleged at least one timely act. *See Lepka v. Help At Home Inc.*, No. 17 C 733, 2018 WL 4281955, at *3 (N.D. Ill. Sept. 7, 2018) (considering allegations of harassment involving different harassers and separated by approximately a year and a half as a single employment practice); *Renfroe v. IAC Greencastle,*

*LLC*, 385 F. Supp. 3d 692, 701 (S.D. Ind. 2019) (finding continuing violation where the alleged harassing incidents were "all racial in nature, occurred throughout Renfroe's employment, and were perpetrated each time by Renfroe's co-workers").

### B. Sufficiency of the Allegations

Additionally, Metra argues that Miller's third amended complaint does not include sufficient facts to state a hostile work environment claim based on sex discrimination. To state a hostile work environment claim, Miller must allege (1) she was subject to unwelcome harassment, (2) the harassment was based on her gender, (3) the harassment was severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) a basis exists for employer liability. *Huri*, 804 F.3d at 834.

A hostile work environment claim requires that the harassment be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell*, 400 F.3d at 1047. Whether an environment is sufficiently hostile "can be determined only by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Metra argues that the third amended complaint lacks details surrounding the alleged incident in October 2018 and therefore the allegations do not rise to the required level of sexually offensive conduct. It is premature for the Court to dismiss hostile work environment claims at the pleadings stage when the plaintiff has pleaded facts that could consist of violations of the relevant laws. *See Huri*, 804 F.3d at 834 (dismissal of hostile work environment claims would be premature where the plaintiff pleaded facts "that could have happened and which discovery

8

can be reasonably expected to reveal" (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010))); *see also E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) (plaintiff alleging racial discrimination can allege employers' intent "quite generally" and still proceed beyond pleadings).

Here, Miller has pleaded that her co-workers at Metra repeatedly made sexually vulgar comments to her. She also alleges that Drinkwater took an unauthorized photo of her and passed it around to employees who then made derogatory comments to her about it. Additionally, Frencher assaulted and threatened Miller and showed her dirty pictures. Although Metra contends that these allegations fail to reach the level of actionable sexual harassment, Miller has pleaded sufficient facts to satisfy the pleading standard and provide Metra with fair notice of her claim. *See Huri*, 804 F.3d at 834 ("[I]t is premature to conclude just how abusive Huri's work environment was."); *Swanson*, 614 F.3d at 404 ("[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007))); *James v. Lydon*, No. 19 C 3366, 2020 WL 3192286, at *5 (N.D. Ill. June 15, 2020) ("[C]ourts in this district have tended to deny motions to dismiss where plaintiffs alleged some ongoing or repeat instances of harassment.").

## II. Retaliation Claim

To plead a Title VII retaliation claim, Miller need only "allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). Metra reprises its argument that Miller has failed to sufficiently plead that she undertook any protected activity prior to the alleged adverse employment action, an actionable adverse action, and a causal connection between the two.

9

The Court agrees with Metra that Miller has not sufficiently alleged an actionable adverse action. For an action to qualify as materially adverse, "a plaintiff must show that the action would have 'dissuaded a reasonable worker from' engaging in protective activity." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901–02 (7th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). As to this element, Miller refers to her April 2, 2019 one-day deferred suspension. While "[a] suspension without pay . . . would constitute an adverse employment action," the Seventh Circuit has concluded that a suspension that is never served does not, even under the more lenient standard for adverse employment actions for retaliation claims. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005); *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120–21 (7th Cir. 2009) (an unfulfilled threat, such as a suspension that is never served, does not amount to a materially adverse action). Here, Miller does not allege that she served the deferred suspension or that it otherwise caused her any hardship. Therefore, following the Seventh Circuit's decisions in *Whittaker* and *Nagle*, the Court cannot conclude that Miller experienced an adverse employment action. *Nagle*, 554 F.3d at 1120–21; *Whittaker*, 424 F.3d at 647. The failure to allege an actionable adverse action requires dismissal of her retaliation claim. And because Miller has already had several chances to plead a retaliation claim, the Court dismisses this claim with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Metra's motion to dismiss [53]. The Court dismisses Miller's retaliation claim (Count II) with prejudice. The Court orders the Clerk of Court to terminate Frencher and Rodriquez as Defendants in this case.

Dated: August 31, 2021

                                                      _____
                                                      SARA L. ELLIS
                                                      United States District Judge